```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DONALD WATKINS, JR.,              :   CIVIL ACTION
                                  :
              Plaintiff,          :
                                  :   No. 02-CV-4819
      v.                          :
                                  :
                                  :
BOARD OF DIRECTORS OF             :
CITY TRUSTS, et al.,              :
                                  :
              Defendants.         :
```

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS.**

---

### INTRODUCTION.

On July 22, 2002, Donald Watkins, Jr. ("Watkins") filed a four count pro se Complaint against the Board of Directors of City Trusts, Girard College Board of Managers, the Estate of Stephen Girard, the Administrators of the Estate of Stephen Girard (collectively, "Girard"), and two of the College's administrators, the unidentified "Human Resources Supervisor at the School" ("Supervisor") and Marge Jackson, Human Resources Assistant ("Jackson"). [Complaint at ¶¶ 2-5.] Watkins asserts claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., the Due Process and Equal Protection Clauses of the United States Constitution and for breach "of the contract between plaintiff and defendants." Each of these claims is based on the allegation that Girard improperly terminated Watkins' employment for failure to return to work after taking an allegedly approved medical leave of absence for a psychological problem.

Even accepting Watkins' allegations, the Complaint is fatally deficient in all respects and should be dismissed.

**FACTUAL BACKGROUND.**

Girard is an educational institution managed by the City of Philadelphia, acting by the Board of Directors of City Trusts (the "Board").[1] [See Complaint at ¶ 3.] The Board is the statutory agency created by the Commonwealth of Pennsylvania to administer estates bequeathed to the City of Philadelphia and, as such, oversees the operations of Girard. See Complaint, ¶ 3; 53 P.S. § 16365; In re School Asbestos Litigation, 56 F.3d 515, 517 (3d Cir. 1995).

On October 2, 1999, Watkins began employment with Girard as a kitchen worker. [Complaint at ¶ 6.] The terms of Watkins' employment were governed by a Collective Bargaining Agreement ("Agreement") between Girard and the International Brotherhood of Teamsters Local 628 ("Union").[2] Article XII of the Agreement, titled "Grievance Procedures," establishes a mandatory and exclusive procedure for resolving grievances, including any related to the termination of a bargaining unit employee such as Watkins. Article XII, Section 1, in relevant part, states:

---

[1] Girard is a school for "orphaned" children established by the Will of Stephen Girard. It provides education for male and female students in first through twelfth grades.

[2] Watkins refers to an "employment contract ... between permanent employees and [Girard]" in Paragraph 7 of the Complaint, but fails to attach any such agreement (although it is referenced in Exhibit "A" to the Complaint). Watkins is clearly referring to the Collective Bargaining Agreement, as it was the only agreement between the parties relating to Watkins' employment at Girard. As such, a true and correct copy of the Collective Bargaining Agreement is attached as Exhibit "A" to this Memorandum of Law, and is properly considered by the Court in connection with this Motion to Dismiss. See In re Donald Trump Secs. Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993), cert. denied, 510 U.S. 1178, 114 S.Ct. 1219 (1994)("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document"); Rogan v. Giant Eagle, Inc., 113 F.Supp.2d 777, 780-1 (W.D.Pa. 2000), aff'd, 276 F.3d 579 (3d Cir. 2001).

"Should any grievance arise as to a violation of this Agreement, the employee or employees affected and the Union shall process the grievance in accordance with the following procedure:

"<u>STEP ONE</u>:  The employee or employees affected shall take the matter up with his departmental supervisor within ten (10) days of its occurrence through the Union steward and together they shall attempt to effect a satisfactory settlement.  The supervisor shall have ten (10) days after the grievance was first presented to settle the matter.  If no satisfactory settlement is reached, the grievant and the Union may within ten (10) days after the departmental supervisor's answer appeal to STEP TWO.

"<u>STEP TWO</u>:  The grievance shall be reduced to writing by the Union and referred to the grievant's departmental supervisor or his authorized representative who shall meet with Union Business Agent.  The departmental supervisor or his authorized representative shall have ten (10) days after that meeting to give his answer.  If no satisfactory settlement is reached within ten (10) days after the departmental supervisor's answer, the Union may appeal the matter to STEP THREE.

"<u>STEP THREE</u>:  The Union will submit the written grievance to the Director of Business Operations or his authorized representative who shall have ten (10) days in which to give his answer.  The Director of Business Operations or his authorized representative may confer with the Business Agent.  If no settlement is reached, the grievance may be appealed to arbitration by the Union upon written notice to the College and the American Arbitration Association by certified mail within ten (10) days of the answer to the Director of Business Operations.  The arbitration shall

> then proceed in accordance with the current rules of the American Arbitration Association." [Exhibit "A" at 17-18.]

Article XII, Section 3 confirms that these procedures are final, exclusive and binding:

> "3. The disposition of any grievance at any step of the grievance procedure or prior to actual receipt of the decision of an arbitrator, by agreement between the College and the Union shall be <u>final</u> and <u>binding</u> upon the employee, employees, or persons who are involved or affected thereby. Any interpretation of this Agreement agreed upon by the College and the Union shall be <u>final</u> and <u>binding</u> upon all employees and upon any persons affected thereby." [Exhibit "A" at 18 (emphasis added).][3]

Article XIII, Section 2, likewise makes clear that any arbitration decision is "<u>final</u> and <u>binding</u> upon the College, the Union and the employee covered by this Agreement," such as Watkins. (Emphasis added.)

Watkins alleges that on or around May 15, 2000, he informed Girard that he was experiencing psychological problems and requested medical leave under the FMLA. [Complaint ¶¶ 8-9.] Watkins claims that Girard approved his leave request, although he never was provided with a copy of documentation confirming the leave. [Complaint at ¶ 11.] Significantly, Watkins does not allege that he had been employed at Girard for at least twelve months and that he had worked at least 1,250 hours at Girard

---

[3] Section 2 of Article XII also makes clear that "[t]ime is of the essence," and, if a grievance is not pursued as required by Article XII, it "shall be considered as settled on the basis of the best answer of the College if not appealed to the next step or to arbitration within the time limitations..." established by the contract. [Exhibit "A" at 18.]

during the twelve months before his leave (as addressed below, both prerequisite to eligibility for FMLA leave).

Admittedly, when Watkins failed to return to work, Girard terminated his employment on July 27, 2000, as Watkins had been absent from work for more than forty-eight consecutive hours without notifying Girard.[4]  [Complaint at ¶ 19 and Exhibit "A".] Watkins does not allege that he pursued any available recourse under the Collective Bargaining Agreement, including the mandatory grievance procedure, nor does he suggest that the Union did not fairly represent him at any time.[5]

## **A R G U M E N T**

### A. **Standard For Motion To Dismiss.**

"The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint." Adams v. United States Equal Employment Opportunity Commission, 932 F.Supp. 660, 663 (E.D.Pa. 1996).  "A complaint

---

[4] Article VII.3(h) of the Collective Bargaining Agreement provides: "Loss of seniority generally shall be broken and employment shall terminate when an employee: ... (h) is absent for forty-eight (48) consecutive hours without notifying the College...."  [Exhibit "A" at 12-13.]  The Collective Bargaining Agreement also gives Girard, under Article V, "Management Rights," the "sole right to hire, discipline or discharge for just cause..."  [Exhibit "A," Article V.]

[5] Girard, as a public employer, is subject to the mandate of the Pennsylvania Public Employee Relations Act ("PERA"), 43 P.S. §§ 1101.101, et seq., and not the National Labor Relations Act. Thus, Article I of the Collective Bargaining Agreement provides: "The College recognizes the Union as the sole and exclusive bargaining agency for all powerhouse operators, maintenance employees, laundry workers, dietary and service employees, cleaning aides, groundskeepers and tailor shop employees and excluding guards (watchmen and gatemen), supervisors, confidential, management and all other employees, pursuant to the Pennsylvania Labor Relations Board's certification dated January 21, 1983 in Case No. PERA-R-321-E."  [Exhibit "A" at 5.]  See, e.g., Dubose v. District 1199C, National Union of Hospital and Health Care Employees, 105 F.Supp. 2d 403, 416 (E.D.Pa. 2000)(PERA and related claims against public sector employer governed by Pennsylvania labor law).

may be dismissed when the facts pled and the reasonable inferences therefrom are legally insufficient to support the relief sought." Nelson v. Temple University, 920 F.Supp. 633, 634 n.2 (E.D.Pa. 1996). "Vague and conclusory allegations do not provide fair notice and will not survive a motion to dismiss." Slater v. Marshall, 915 F.Supp. 721, 723 (E.D.Pa. 1996). "If no cause of action can be identified, dismissal is proper." City of Erie v. Guaranty National Insurance Company, 935 F.Supp. 610, 613 (W.D.Pa. 1996), aff'd, 109 F.3d 156 (3d Cir. 1997). Applying these well established rules, it is clear that this Complaint must be dismissed.

    **B.    Watkins Has Failed To State A Claim Under The FMLA (Count I) Because Girard Is Subject To Eleventh Amendment Immunity And, In Any Event, Watkins Cannot Satisfy The Eligibility Requirements For FMLA Leave.**

        **1.    Eleventh Amendment Immunity.**

In Chittister v. Department of Community & Economic Development, 226 F.3d 223 (3d Cir. 2000), the Third Circuit expressly considered whether Congress intended to abrogate Eleventh Amendment immunity traditionally granted to the states when it enacted the FMLA. Citing decisions in other Circuits, the Third Circuit concluded that "Congress did not validly abrogate the states' Eleventh Amendment immunity when it enacted [the FMLA]." 226 F.3d at 225. Further, the Court concluded that the Commonwealth of Pennsylvania has not consented to suits under the FMLA, expressly or constructively. 226 F.3d at 226-227; see also Koslow v. Commonwealth of Pennsylvania, 158 F.Supp.2d 539, 543 (E.D.Pa. 2001).

Here, Watkins admits in Paragraph 3 of the Complaint that defendants "collectively are a government agency created by the Pennsylvania General Assembly...." [Complaint, ¶ 3; see 53 P.S.

§ 16365.]  Moreover, the United States Supreme Court has expressly recognized that "[t]he Board which operates Girard College is an agency of the State of Pennsylvania." Commonwealth of Pennsylvania v. The Board of Directors of City Trusts of the City of Philadelphia, 353 U.S. 230, 231, 77 S.Ct. 806, 807 (1957).[6]  In fact, for purposes of creating immunity, the Pennsylvania General Assembly defined an immune "Commonwealth Party" as a Commonwealth agency and any employee thereof.  42 Pa.C.S.A. § 8501.  "Commonwealth agencies" include independent agencies which, in turn, are defined to include boards, such as the Board of Directors of City Trusts.  42 Pa.C.S.A. § 102.  Thus, it is clear that the Eleventh Amendment bars any FMLA claim in this case.

### 2. FMLA Eligibility Arguments.

Even if the FMLA were applicable to Girard, an employee is not eligible for FMLA leave unless he or she has been employed for at least 12 months by the employer and has worked a minimum of 1,250 hours in the prior 12 month period.  29 U.S.C. § 2611(2); 29 C.F.R. § 825.110(a)(1); Dolese v. Office Depot, Inc., 231 F.3d 202 (5th Cir. 2000); Clark v. Allegheny University Hospital, 1998 U.S.Dist.LEXIS 2305 (E.D.Pa. March 4, 1998); Jessie v. Carter Health Care Center, 926 F.Supp. 613 (E.D.Ky. 1996).

---

[6] The Third Circuit also has held with respect to the Board and Girard College: "in reality, the two are not distinct legal entities.... [T]o sue Girard College, you must sue the Board of Directors as a Trustee."  In re School Asbestos Litigation, supra, 56 F.3d at 521.  The other defendants include the "Girard College Board of Managers" ("Board of Managers"), the "Estate of Stephen Girard" and the "Administrator of the Estate of Stephen Girard" ("Administrator").  None of these so-called entities have any existence separate and independent from the Board itself, which was created by the Pennsylvania General Assembly to administer Girard.

Watkins has not alleged, nor could he, <u>any</u> facts satisfying these requirements. As made clear in the Complaint, Watkins began part-time employment with Girard on October 2, 1999, requested FMLA leave on May 15, 2000 and was terminated on July 27, 2000.[7] [See Complaint, ¶¶ 6, 8, 19.] Watkins, therefore, fails to meet the requirements of an "eligible employee" for purposes of the FMLA because he was employed by Girard for less than one year.[8] Accordingly, Count I, which asserts claims under the FMLA must be dismissed.

    **C.    Watkins Has Failed To State A Claim For Violations Of Due Process (Count II) Because He Failed To Follow The Available Due Process Under The Collective Bargaining Agreement**.

A collective bargaining grievance procedure which gives the employee the right to proceed to arbitration provides the employee with an adequate due process safeguard. See <u>Jackson v. Temple University</u>, 721 F.2d 931, 933 (3d.Cir. 1983). This is true even if the employee or his union does not take advantage of the grievance process. See <u>Barnes v. SEPTA</u>, 1994 U.S.Dist.LEXIS 15999, *5-7 (E.D.Pa. Nov. 7, 1994)(employees' claims for violations of due process dismissed where union chose not to pursue plaintiffs' grievances to arbitration after SEPTA rejected them during the three-step grievance process).

---

[7] Although Watkins was not entitled to FMLA benefits on the face of the Complaint, his termination records, which are attached as Exhibit "B," show that he was actually terminated July 7, 2000.

[8] Even if Girard had employed Watkins for at least a year, his payroll records, copies of which are attached as Exhibit "C," reveal that he only worked 1,116.75 hours, short of the FMLA's required 1,250 hours. In any event, to be deemed an "eligible employee" under the FMLA, Watkins would have to have met <u>both</u> requirements. See <u>Wolke v. Dreadnought Marine, Inc.</u>, 954 F.Supp. 1133, 1134 (E.D.Va. 1997)(employee not eligible where not employed for 12 months). He did not.

Contrary to Watkins' allegations, Article XII of the Collective Bargaining Agreement provides a three-step procedure for handling <u>any</u> grievances related to <u>any</u> alleged violation of the Agreement, including Girard's decision to terminate Watkins' employment. This procedure provided due process protection, as a matter of law, by giving Watkins the "process" to challenge his termination, including final and binding arbitration. As Watkins failed to take advantage of the grievance procedure in any manner, individually or through his Union representatives, his due process claim under Count II fails and must be dismissed.

    **D.    Watkins Has Failed To State A Claim For Equal Protection (Count III) Because He Has Failed To Allege Discriminatory Intent.**

Watkins claims that Girard violated his constitutional right to equal protection by discriminating against him on the basis of his mental illness. "In order to plead a violation of the equal protection clause, [a plaintiff] must allege both discriminatory conduct or effect and discriminatory intent." <u>McColm v. Balistreri</u>, 2002 U.S.Dist.LEXIS 9518 at *12-13 (N.D.Cal. May 17, 2002)(dismissing equal protection claim by resident against city which issued building permit to contractor but refused to limit hours of construction to accommodate resident's physical and mental disabilities)(<u>citing</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974)). "Conclusory allegations by themselves do not establish an equal protection violation without proof of invidious discriminatory intent." <u>McColm</u>, <u>supra</u>, 2002 U.S.Dist.LEXIS 9518 at *13 (<u>citing</u> <u>Village of Arlington Heights v. Metropolitan Housing Development Corp</u>., 429 U.S. 252, 265, 97 S.Ct. 555 (1977)).

Watkins fails to plead any facts sufficient to properly

allege discriminatory intent by Girard. He has not even suggested that Girard did not terminate any other employee who failed to report to work, as expressly permitted by the Collective Bargaining Agreement. [See Exhibit "A" at Article III.3.(h).] Consequently, Watkins' equal protection claim in Count III must fail. See McColm, supra (equal protection claim dismissed for failure to plead facts which would demonstrate that plaintiff was treated differently than other permit applicants).[9]

### E. Watkins' State Law Claim For Breach Of Contract (Count IV) Is Preempted By The Collective Bargaining Agreement And Applicable Labor Law.

Pennsylvania courts have made clear that an employee subject to a collective bargaining agreement with a mandatory grievance and arbitration procedure, such as Watkins, has no independent remedy for claims relating to a discharge or other conduct governed by the terms of the collective bargaining agreement. See, e.g., Falsetti v. Local Union No. 2026, United Mine Workers of America, 400 Pa. 145, 161 A.2d 882, 889 (1960)(exhaustion of exclusive contract remedies required with few exceptions); Gingrich v. City of Lebanon, 57 Pa.Cmwlth. 594, 427 A.2d 278,

---

[9]As all of the federal claims are not properly before this Court, the Court should dismiss Watkins' state law claim for breach of contract, as there is no independent federal jurisdiction. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966)("Certainly, if the federal claims are dismissed before trail, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Crilly v. Southeastern Pennsylvania Transportation Authority, 529 F.2d 1355, 7 PPER 162 (3d Cir. 1976)(Court dismissed action against SEPTA for wrongful discharge since there was no claim under federal labor law). In a case such as this, particularly at this preliminary stage of the proceedings, the Court should not elect to exercise supplemental jurisdiction. See, e.g., Plummer v. Chester Housing Authority, 1994 U.S.Dist.LEXIS 17744, *18-21 (E.D.Pa. 1994)(PERA unfair representation claims dismissed as Court declined to exercise supplemental jurisdiction).

279-80 (1981)(contract claim dismissed as collective bargaining agreement provided exclusive remedy for dispute resolution); cf. Dubose v. District 1199C, National Union of Hospital and Health Care Employees, supra, 105 F.Supp.2d at 416 (breach of contract claims under PERA and related claims for fraud and misrepresentation dismissed since "employees of public institutions cannot sue their employer for breach of contract damages").

The only exception under Pennsylvania law to this clear bar, as under federal law,[10] arises where, in addition to any breach of contract, the employee also can establish that he was unfairly represented by the union in connection with the grievance process. For example, in Martino v. Transport Workers' Union of Philadelphia, Local 236, 505 Pa. 391, 480 A.2d 242 (1984), after SEPTA discharged plaintiff, the union only represented him through the internal grievance procedures but refused to arbitrate the claim. The Pennsylvania Supreme Court only permitted that case to proceed, and determine if arbitration was required, because the employee also alleged that the union breached its duty of fair representation:

> "In conclusion, we hold today that before a court in equity may entertain a complaint seeking to order arbitration, the complainant must prove that the union acted in bad faith towards its member. Once it has been determined that the union breached its duty of fair representation, the Court of Common Pleas sitting in equity many order the completion of the arbitration

---

[10] See e.g. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 914 (1967); Del Costello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 2290-1 (1983); Findley v. Jones Motor Freight, Division of Allegheny Corp., 639 F.2d 953, 958 (3d Cir. 1981).

> procedure and, in cases governed by state labor law its power is limited to that remedy.  The only matter before the arbitrator would be to determine whether or not the complainant was wrongfully discharged and to apportion damages for backpay in a manner consistent with this opinion, if the arbitrator concludes backpay is warranted.  Under this procedure, a wrongfully discharged employee receives precisely the treatment all the employees in the unit are entitled to under the collective bargaining agreement."  480 A.2d at 252.

Similarly, in Ziccardi v. Commonwealth of Pennsylvania, 500 Pa. 326, 456 A.2d 979 (1982), after plaintiff was terminated, the union refused to proceed to arbitrate her claim under the collective bargaining agreement (because plaintiff rejected a proposed settlement).  Plaintiff, as here, then commenced an action directly against her employer, claiming breach of contract and wrongful discharge.  However, the Supreme Court rejected any such independent right of action:

> "Appellant is not entitled to bring an equity and assumpsit action against her employer for breach of the collective bargaining agreement.  That procedure was specifically disapproved in Falsetti, [supra]."  456 A.2d at 981.

The Supreme Court's general rule only was tempered where (as later explained in Martino) the employee could also demonstrate something more:

> "We hold, as a general rule, that an employee has no right to sue his employer in equity and assumpsit for wrongful discharge where his union has refused to proceed to arbitration.  Of course, we do not here reach the situation where he alleges and shows by specific facts that the employer actively

> participated in the union's bad faith, or conspired with it to deny the employee the job protection accorded him by the collective bargaining agreement.  By giving the employee an unfettered right to sue the employer for the union's bad faith, we would relieve the wrongdoer of any effective sanction, make the plaintiff whole at the expense of an innocent party and bind that innocent party by the action of the plaintiff's agent, over whom it has no control.  This would be in total violation of the principles of the law of agency.  Furthermore, any attempt by the employer to exercise over the union in such matters violates fundamental principles of labor law concerning the right of the bargaining agent and its members to be free of employer coercion.  Thus, the Commonwealth Court correctly sustained the preliminary objections to the action against the employer on the theory of breach of the bargaining agreement's just case provision."  456 A.2d at 981-2.

See also Kissell v. Commonwealth of Pennsylvania Department of Corrections, 1999 Pa.Commw.LEXIS 461, *40-41 (June 11, 1999):

> "[Plaintiff], a public employee, was covered by the Public Employee Relations Act, 43 P.S. § 1101.101 et seq.  Under the case law, [plaintiff] was required to meet the burden of proving that the union breached its duty of fair representation to him.  The duty is breached only if the union's refusal to carry a grievance through to arbitration is due to arbitrariness, discrimination or bad faith.  Broad discretion is given the union in determining whether to pursue a grievance to arbitration."  (Citations omitted.)

Here, the Collective Bargaining Agreement contains exclusive grievance and arbitration procedures applicable to Watkins' breach of contract claims.  [See Exhibit "A," Article XII.]  As

noted above, <u>all</u> of Watkins' claims, including any complaints for improper termination while on medical leave and failure to provide him with "notice of the charges against him" or a pre-termination hearing [Complaint, ¶ 37], are subject to this grievance procedure.  In fact, the letter of termination attached to the Complaint as Exhibit "A" specifically refers to the contractual basis for Watkins' termination in the Collective Bargaining Agreement.  Yet, Watkins has not alleged that he ever attempted to invoke, let alone exhaust, the mandatory grievance and arbitrary procedures, including any internal union procedures for an appeal, with respect to any grievance related to his termination.  Thus, as Watkins' claim in Count IV flows <u>directly</u> from the terms of the Collective Bargaining Agreement -- the <u>only</u> employment agreement between the parties -- it must be dismissed for this reason alone.

    Moreover, Watkins offers no allegation of any breach of the duty of fair representation by the Union.  To do so, Watkins would be required to allege that Teamsters Local 628 acted in some arbitrary or discriminatory manner, or in bad faith.  This Complaint is silent of any such allegations, or even a reference to the Union.  Even were Watkins now to parrot such an allegation, it bears note that a conclusory statement is insufficient.

    For example, in <u>Reisinger v. Commonwealth of Pennsylvania Department of Corrections</u>, 130 Pa.Cmwlth. 585, 568 A.2d 1357 (1990), plaintiffs, allegedly improperly characterized for purposes of placement on the wage schedule, alleged bad faith by the union and "collusion" with the employer in connection with the union's refusal to arbitrate their formal grievance.  568

A.2d at 1359. The Court agreed with the employer that plaintiffs had failed "to plead specific facts" as to such alleged collusion, and, citing <u>Ziccardi</u>, again emphasized:

> "It is clear that in Pennsylvania, an aggrieved employee is not, as a general rule, entitled to sue his public employer directly for a breach of a collective bargaining agreement in a situation where a union in bad faith has refused to proceed to arbitration <u>and no specific facts are pled that the employer has participated in the union's bad faith</u>.
>
> \* \* \*
>
> "Thus, where there has been a breach on the part of the union of its duty of fair representation <u>and no collusion on the part of the employer is shown</u>, the employee cannot obtain a direct remedy against the employer.... There is, however, as indicated, an exception to the general rule and that exception exists where the employee alleges and shows by <u>specific</u> <u>facts</u> [emphasis in original] that the employer actively participated in the union's bad faith or conspired with the union to deny the employee his rights under the collective bargaining agreement." 568 A.2d at 1360 (emphasis added except as noted).

Similarly, in <u>Runski v. American Federation of State, County and Municipal Employees, Local 2500</u>, 142 Pa.Cmwlth. 662, 598 A.2d 347 (1991), <u>aff'd</u>, 537 Pa. 193, 642 A.2d 466 (1994), plaintiff, a prison guard, sought damages resulting from his failure to be permitted to work in a new cell block, alleging that his union breached its duty of fair representation and conspired with his employer, the Department of Corrections, to deny his rights. Citing <u>Martino</u> and <u>Ziccardi</u>, the Court again held that, "in Pennsylvania, as a general rule, an aggrieved public employee has

no right to sue his or her employer for breach of a collective bargaining agreement." 598 A.2d at 350. The Court emphasized that the <u>sole</u> exception requires allegations of <u>specific</u> <u>facts</u> showing bad faith by the union <u>and</u> collusion between the union and the public employer. <u>Id.</u> However, "[t]his conclusory allegation of conspiracy alone does not satisfy the requirement that the employee, to recover damages, must show by specific facts that the Commonwealth actively participated in AFSCME's alleged bad faith or conspired with AFSCME to deny his right under the collective bargaining agreement." <u>Id.</u> at 351. As the Court could not infer such facts from generalized allegations of a conspiracy, the Complaint was dismissed.

The Commonwealth Court also defined the "specific facts" required to be alleged to show bad faith in <u>Speer v. Philadelphia Housing Authority</u>, 111 Pa.Cmwlth. 91, 533 A.2d 504 (1987), where plaintiff sought money damages claiming, as here, she was wrongfully discharged by the Philadelphia Housing Authority following a work-related injury. Acknowledging that the union refused or failed to arbitrate her grievance, the Court nevertheless agreed that plaintiff had established no facts showing bad faith:

> "The record in this case indicates that Speer sought help from her union in resisting the authority's announced intention to discharge her. The union arranged for a meeting among Speer, representatives of the union, and representatives of the employer, which meeting conformed to the requirements of Step Three of the grievance procedure in the collective bargaining agreement. The union did not then pursue arbitration of Speer's grievance. That is all that the record shows. Speer introduced no evidence

> tending to establish fraud,
> misrepresentation, bad motive or
> the like on the part of the union.
> The trial court's conclusion that
> Speer had not met the high standard
> of showing bad faith on the part of
> the union clearly was correct.
> Therefore, even if the union had
> been served, Speer would not have
> been entitled to relief upon the
> evidence in this record." 533 A.2d
> at 507.

See also Dubose v. District 1199C, National Union of Hospital and Health Care Employees, supra, 105 F.Supp.2d at 417 (no right to damages where no facts support conspiracy theory); Dorfman v. Pennsylvania Social Services Union, 752 A.2d 933, 936 (Pa.Commw. 2000)("In order to survive a preliminary objection, the petitioner must allege arbitrariness, discrimination or bad faith on the union's part by specific facts; mere conclusory allegations in the pleadings without supporting factual allegations are not sufficient.").

Here, of course, Watkins' Complaint is devoid of any of the required "specific facts" demonstrating the Union's unlawful conduct. Accordingly, Count IV should be dismissed, particularly to the extent Watkins only seeks money damages.[11]

Moreover, in Hollinger v. Department of Public Welfare, 469 Pa. 358, 365 A.2d 1245 (1976), the Supreme Court of Pennsylvania

---

[11] At most, even if Watkins could somehow allege specific facts of bad faith by the Union, the most to which he would be entitled is an order compelling arbitration. See Speer v. Philadelphia Housing Authority, supra, 111 Pa.Cmwlth. at 506 ("[I]nstead of seeking an order to compel arbitration, [plaintiff] has sought money damages against the employer. Under Martino such damages are not available from the court of common pleas without some showing of collusion between the employer and the union that resulted in the union's breach of its duty of fair representation, and no such allegations appear in this case."); Fleck v. American Federation of State, County and Municipal Employees, 106 Pa.Cmwlth. 330, 526 A.2d 834, 836 (1987)(sufficient to allege union bad faith only if seeking to compel arbitration).

held that there was no jurisdiction for suits by public employees against public employers, such as Girard, to the extent that such claims constitute unfair labor practices under the PERA (in which the Pennsylvania Labor Relations Board would have <u>exclusive</u> original jurisdiction). Here, pursuant to Section 1201(a) of the PERA, 43 P.S. § 1101.1201(a), public employers are prohibited from:

> "Interfering, restraining or coercing employees in the exercise of the rights guaranteed in Article IV of this Act.
>
> \* \* \*
>
> "(3) Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employee organization."

Depending on the exact nature of Watkins' breach of contract claim, these sections appear to be applicable and would bar this claim since it would fall within the exclusive jurisdiction of the PLRB.

Finally, any claim by Watkins, even if otherwise permitted, is time-barred. Watkins commenced this action by filing his Complaint on or about July 22, 2002, more than <u>two years</u> after his termination on July 8, 2002, as he admits in Paragraph 17 of the Complaint.

In <u>Plummer v. Chester Housing Authority</u>, <u>supra</u> 1994 U.S.Dist.LEXIS 17744 at \*20-21, the District Court acknowledged the lack of certainty concerning the applicable statute of limitations, noting that "bad faith" wrongful termination claims could be subject to the four month statute of limitations under the PERA (as similar claims under federal law are subject to the 6 month statute under the National Labor Relations Act):

"Both defendants have raised a statute of limitations challenge to plaintiff's PERA claims. The defendants claim that the operative statute of limitations for PERA is four months. Although PERA does not expressly provide for private causes of action, the Pennsylvania supreme court has held that a private plaintiff may bring an action against his union under PERA seeking to compel arbitration because of the union's bad faith failure to pursue his grievance to arbitration, <u>Martino v. Transport Workers' Union</u>, 505 Pa. 391, 480 A.2d 242, 243 (Pa. 1984), and may also join the employer as a defendant in the suit if plaintiff alleges that the employer participated in the union's breach of its duty of fair representation. Id. at 250. PERA includes a four month limitations period on petitions or charges made to the Pennsylvania Labor Relations Board pursuant to PERA. 43 Pa. Cons. Stat. Ann. § 1101.1505. It is not clear, however, whether this limitations period is also applicable to a Martino-type private action under PERA. Furthermore, assuming that the four month limitations period is applicable, a significant question arises as to whether the period began to run when the plaintiff received final and formal notice of termination in February of 1994, or was tolled until mid-April, when plaintiff alleges he was first able to contact his union regarding his termination and learned that Local 473 would not seek arbitration. Given the potentially outcome determinative nature of statutes of limitation and the unsettled state of the law surrounding PERA's statute of limitations, I conclude that plaintiff's PERA claims involve undecided novel and complex issues of state law. These unsettled questions are better left to determination by the Pennsylvania state courts. Therefore, I decline to exercise supplemental jurisdiction over plaintiff's PERA claims against CHA

and Local 473."

In <u>Casner v. American Federal of State, County and Municipal Employees</u>, 658 A.2d 865 (Pa.Commw. 1995), the Commonwealth Court, on similar facts, decided that unfair representation claims did not arise under the PERA but were more similar to legal malpractice claims, and subject to a two-year statute of limitations (citing to the dissent in <u>DelCostello v. International Brotherhood of Teamsters</u>, 462 U.S. 151, 103 S.Ct. 2281 (1983), where the Supreme Court applied the 6-month statute of limitations to federal fair representation claims). 658 A.2d at 870.

In either case, Watkins' purported wrongful discharge claim, in reality a defective duty of fair representation claim, must be dismissed as untimely as it was filed more than 2 years after his termination.

## **CONCLUSION**

For all of the foregoing reasons, defendants requestthat the Complaint be dismissed in its entirety.

|  |  |
|---|---|
| **OF COUNSEL**:<br>Pelino & Lentz, P.C.<br>One Liberty Place<br>Thirty-Second Floor<br>1650 Market Street<br>Philadelphia, PA 19103-7393<br>(215) 665-1540 | _____<br>Howard A. Rosenthal<br>Kevin C. Rakowski<br>  Attorneys for Defendants |